UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EVERYTOWN FOR GUN SAFETY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | DOCKET NO:_____ |
| v. | ) | |
| | ) | COMPLAINT FOR |
| BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES. | ) ) | INJUNCTIVE RELIEF |
| | ) | |
| Defendant. | ) | |
| | ) | |

PRELIMINARY STATEMENT

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, for injunctive and other appropriate relief, seeking to compel defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") to immediately process and release agency records requested by plaintiff. It is brought by Everytown for Gun Safety ("Everytown"), a gun violence prevention organization that conducts research on firearms policy and advocates for measures to reduce gun crime and save lives.

2. When a law enforcement agency recovers a firearm in the course of a criminal investigation, it can ask ATF to trace the firearm to gather information about its origins. ATF is the sole federal agency authorized to trace firearms. Using the serial number and other details about the manufacturer and model of the gun, ATF can typically trace the firearm from its manufacturer, through a wholesaler and retail outlet, to its first purchaser. Whenever such a query is made, ATF records the data obtained in the investigation — known as "trace data" — in its Firearms Tracing System. In 2014, ATF responded to 364,441 trace requests.

3. In this action, Everytown seeks readily available aggregate trace data, none of which requires the disclosure of information identifying any specific firearm, any particular firearms dealer, or any individual firearm purchaser. Since 2006, ATF has made similar aggregate trace data available to the public on its website, including a state-by-state breakdown of recovered and traced firearms.

4. To promote transparency in government, FOIA requires federal agencies — including ATF — to make agency records available to the public upon request, with limited exceptions. But none of those exceptions apply to anonymous, bulk data. Indeed, Congress has expressly instructed that the ATF must provide the public with "statistical aggregate data" of precisely the sort that plaintiff seeks here. *See*, *e.g.*, Pub. L. 110-161, 121 Stat. 1844.

5. There is a significant public interest in shedding light on the patterns of illegal gun trafficking, and the aggregate data requested is among the most valuable sources of information about firearms taken from unlawful possessors or recovered from crime scenes. Understanding the circumstances under which illegal firearms have been transferred from person-to-person — and ultimately to crime scenes — is critical for learning how to better keep guns out of dangerous hands.

6. Everytown has conducted extensive analysis and issued numerous reports using data analogous to the data sought here, as has a predecessor entity, Mayors Against Illegal Guns ("MAIG"), in whose name the requests at issue in this action were filed. (In 2014, MAIG merged with another organization, Moms Demand Action for Gun Sense in America, to form Everytown.) For example, in a 2010 report *Trace the Guns*, MAIG analyzed aggregate data to describe where crime guns originate, where they are recovered in crimes, and which state gun laws help curb the flow of these illegal weapons. In research published in 2013 analyzing the

effects of a Missouri law repealing the state handgun background check system, Everytown used trace data to show that the share of firearms traced by law enforcement which had originated in the state (rather than in other states) increased substantially following repeal of the law, and the share of firearms likely to have been trafficked doubled.  This type of research analyzing aggregate trace data is fundamental to Everytown's work, which uses empirical evidence to formulate public policies that will reduce gun crime and violence.  ATF's failure to comply with its statutory duty  under FOIA  thus interferes not only with the public interest, but also with Everytown's core mission.

## JURISDICTION AND VENUE

7. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(A).  The Court also has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 5 U.S.C. §§ 701 - 706.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

8. Plaintiff Everytown is the largest gun violence prevention organization in the country with more than 2.5 million supporters and more than 40,000 donors including mothers, mayors, survivors, and everyday Americans who are fighting for public safety measures that respect the Second Amendment and help save lives.  At the core of Everytown are MAIG, a group of more than 1,000 current and former mayors from nearly every state  banded together to fight for common-sense gun laws, and Moms Demand Action for Gun Sense in America, a grassroots movement of American mothers founded the day after the Sandy Hook tragedy.

9. Defendant ATF is a bureau housed within the Department of Justice. The Department of Justice ("DOJ") is itself a Department of the Executive Branch of the United States Government and is an agency within the meaning of 5 U.S.C. §552(f)(1).

## FACTS

10. Everytown conducts original, empirical research into the sources and causes of gun violence. It reports its findings to the public in order to educate citizens about the costs and benefits of various types of gun laws. In addition, based on its studies, Everytown crafts evidence-based policies and advocates for the passage of those reforms. Its work with aggregate trace data epitomizes this approach.

11. In 2008, Everytown's predecessor organization, MAIG, published a groundbreaking report entitled "The Movement of Illegal Guns in America" which described previously unreported trends in the movement of illegal guns across state lines and analyzed some of the factors that drove those trends. In 2010, the organization published a second report entitled "Trace The Guns," which updated the original report's findings.

12. Both reports compared laws in the top "source states" for illegal guns — the states where gun were initially sold — to the top "recovery states" for illegal guns — the states where illegal guns were seized by law enforcement. The reports' key finding was that states which supply crime guns at the highest rates have comparatively weak gun laws. The reports concluded that this association strongly suggested that gun traffickers favor as sources those states with lax laws.

13. These conclusions were only possible as a result of the detailed analysis of bulk, aggregate trace data that MAIG obtained from ATF pursuant to FOIA requests virtually indistinguishable from the ones at issue here. In 2008, the organization filed a FOIA request

seeking records containing aggregate trace data for all recovered guns for the years 2006 and 2007, including their recovery states, source states, and "Time to Crime" (defined as the amount of time between when a gun is sold by a dealer and its recovery during a criminal investigation).

14. ATF readily disclosed all but the "Time to Crime" data in 2009.

15. After receiving this initial data from ATF, MAIG inquired anew about release of the missing statistics. ATF responded by saying it had only temporarily delayed disclosure to "ensure that the information [] shared would not compromise ongoing investigations;" ATF then agreed to disclose the "Time to Crime" numbers. *Defendant Letter of March 4, 2010*.

16. Since then, ATF has either denied or failed to respond to plaintiff's subsequent requests for updated trace data, even though the records sought are virtually indistinguishable from those ATF released in the past. This failure to release records containing information vital to a public debate — records that ATF is statutorily obligated to provide upon request — has left Everytown no choice but to file this lawsuit.

## PLAINTIFF'S FIRST REQUEST ON MARCH 13, 2013

17. On March 13, 2013, plaintiff submitted a FOIA request to defendant ATF seeking updated, aggregate trace data. In particular, plaintiff requested records containing trace data from 1998 - 2005, and from 2010 to the date of the request. Plaintiff sought records containing information on: (1) Time to Crime data for traced guns sorted by source state; and (2) all source states for each recovery state, including the number of guns recovered from all source states for each recovery state.

18. On April 25, 2013, ATF rejected this request. According to ATF, "the information . . . requested would only be available through a query of [the agency's] Firearms Trace Database," and that this information could not be disclosed, *Defendant Letter of April 25, 2013*, despite the

fact that this was the very same database from which the agency extracted the records it provided in 2009.  The agency stated that "the ATF 2010 Appropriation Bill prohibits ATF from expending appropriated funds to disclose to the public the contents or any portion thereof of any information maintained in the Firearms Trace Database." *Id.*  But the provision on which ATF relied was also found in the 2009 appropriations bill that was in place at the time of ATF's earlier release of records containing aggregate trace data — which ATF concluded was not restricted by the appropriations bill (or any other law or regulation).

19. On June 17, 2013, Plaintiff appealed ATF's denial to the Office of Information Policy ("OIP") at DOJ.  Plaintiff acknowledged that the cited appropriations provision barred disclosure of trace data for *specific, individual firearms*, but explained that an exception to that ban allowed for disclosure of records containing the type of *aggregate statistical data* that had been requested.  Indeed, it was for that reason that ATF had readily released similar data just a few years earlier.

20. On July 23, 2013, OIP acknowledged that it had received plaintiff's appeal.  More than fifteen months later, having heard nothing further from OIP (or ATF) regarding its appeal, plaintiff contacted OIP on October 31, 2014 to ask for an update on its pending appeal. Plaintiff reiterated that the 2010 appropriations bill "exempt[ed] from non-disclosure the very information" plaintiff sought. *Plaintiff Letter of October 31, 2014.*  Despite the absence of any reason for ATF not to comply with plaintiff's full request, in order to expedite the request, plaintiff narrowed its request to only the years 2010 and 2011.  Finally, to further expedite the process, plaintiff offered to pay any costs incurred in processing the request in order to neutralize any concerns about using appropriated funds to fulfill the request.

21. On December 5, 2014, OIP informed plaintiff that its original appeal had been denied several months previously, providing plaintiff a denial letter dated July 28, 2014 that neither plaintiff nor its counsel had previously received. That letter simply affirmed ATF's initial denial. It did not address plaintiff's contentions regarding the 2010 appropriations bill or ATF's statutory duty to release records containing aggregate statistical trace data.

### PLAINTIFF'S SECOND REQUEST ON MAY 30, 2013

22. Approximately two months after filing its March 13, 2013 FOIA request, plaintiff filed a second request for records containing aggregate trace data, dated May 30, 2013. This request asked specifically for records containing aggregate trace data related to guns recovered in Missouri.[1]

23. On April 8, 2014, after having received no response to its request for nearly a year, plaintiff contacted ATF for an update on the pending request. A representative of ATF's Office of Public and Governmental Affairs responded via email on April 11, 2014, writing that he hoped to provide responsive records to plaintiff within the next week. But when three additional months passed and neither the representative nor anyone else at ATF provided the promised records, plaintiff again asked for a status update. Again via email, the representative apologized for ATF's unresponsiveness and promised an update the next day. Plaintiff never heard from him again.

24. By the fall, a full year and a half after its initial request, and after months of awaiting a response to its repeated informal requests for an update, plaintiff concluded that it had no choice short of litigation but to consider ATF's continued silence to be a constructive denial of

---

[1] **In the same request, plaintiff also sought records containing data** on compliance inspections of federally licensed firearms dealers. To date, ATF has failed to respond to this portion of plaintiff's May 30, 2013 FOIA request. While Everytown does not seek adjudication of this portion of its May 30, 2013 FOIA request in this action, it reserves the right to appeal the constructive denial of this portion of its May 30, 2013 FOIA request at a later date.

its request. Accordingly, on October 14, 2014, plaintiff filed an administrative appeal of ATF's constructive denial with OIP. OIP acknowledged receipt of the appeal in a letter dated October 28, 2014.

25. Shortly thereafter, however, on November 24, 2014, OIP advised plaintiff that it would not review an appeal until a subordinate agency had affirmatively denied a request for information in the first instance. Thus, plaintiff had no apparent means of obtaining the records to which it was lawfully entitled: ATF simply refused to process its request and OIP declined to treat this refusal as an effective denial or to consider plaintiff's appeal. Accordingly, plaintiff was left with no choice but to commence this action.

### PLAINTIFF'S THIRD REQUEST ON APRIL 10, 2014

26. On April 10, 2014, plaintiff filed a third request for records containing aggregate trace data. Plaintiff's third request sought a more targeted set of records: those containing aggregate trace data related to guns reported lost or stolen. For the years 2004-2013, plaintiff sought records documenting: (1) the number of recovered stolen firearms by source state; (2) the Time to Crime data for those guns, specifically those recovered less than two years after an initial sale; and (3) the number of firearms recovered in different states than the ones in which they were sold.

27. In July 2014, ATF denied plaintiff's request, again citing the general appropriations restriction on using funds to disclose trace data on individual firearms.

28. A month later, plaintiff appealed this denial. Plaintiff again explained that its request fell squarely within the aggregate statistical data exemption to the general appropriations bar. OIP acknowledged receipt of the appeal on August 29, 2014.

29. This time, OIP came to a different conclusion than it had in response to plaintiff's appeal on its first request. On January 6, 2015, OIP advised plaintiff that after "carefully

considering your appeal, and as a result of discussions between ATF and this Office," it was remanding the request to ATF for a "search for responsive records." The letter went on to note that "[i]f ATF determines that records are releasable, it will send them to you directly, subject to any applicable fees."

30. Plaintiff has heard nothing from ATF since OIP ordered the agency to search for responsive records more than six months ago.

## CAUSES OF ACTION

### First Cause of Action: Violation of the FOIA for Failure to Make Promptly Available the Records Sought by Plaintiff's Requests.

31. Plaintiff repeats and realleges paragraphs 1-30.

32. Defendant's failure to promptly make available the records sought by plaintiff's requests violates FOIA, 5 U.S.C. § 552(a)(3)(A).

### Second Cause of Action: Violation of the FOIA for Failure to Release Records Sought by Plaintiff's Requests.

33. Plaintiff repeats and realleges paragraphs 1-30.

34. Defendant's failure to release the records sought by plaintiff's requests violates FOIA, 5 U.S.C. § 552(a).

### Third Cause of Action: Violation of the FOIA for Failure to Timely Respond to Plaintiff's Requests.

35. Plaintiff repeats and realleges paragraphs 1-30.

36. Defendant's failure to timely respond to plaintiff's requests violates FOIA, 5 U.S.C. § 552(a)(6)(A)(i), and ATF's own regulations promulgated thereunder.

## REQUESTED RELIEF

WHEREFORE, plaintiff prays that this Court:

a) order defendant ATF to immediately and expeditiously process plaintiff's FOIA requests and to disclose the requested records, waiving all processing fees;

b) award plaintiff its costs and reasonable attorneys fees incurred in this action; and

c) grant such other relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ Lawrence S. Lustberg
Lawrence S. Lustberg, Esq.
Ana Muñoz, Esq.
GIBBONS P.C.
One Gateway Center
Newark, NJ 07102-5310
(973) 596-4500

Dated: July 23, 2015